## Elder York and Margaret E. York, Appellees, v. Lyman C. Scott and L. D. Shryock, Appellants.

1. APPEALS AND ERRORS—*what abstract should contain.* While an abstract need not contain portions of the record upon which no question is raised, those portions on which error is assigned should be so clearly and fully abstracted that there will be no necessity for the court or opposite counsel to inspect the record.

2. ASSIGNMENTS—*when subject to equitable defenses.* An instrument not assignable at common law and not assignable by virtue of any statute in this state is taken by an assignee for value without notice, subject to all equitable defenses.

Bill in chancery. Appeal from the Circuit Court of Crawford county; the Hon. E. E. NEWLIN, Judge, presiding. Heard in this court at the August term, 1907. Affirmed. Opinion filed March 18, 1908.

J. C. EAGLETON, McCARTY & ARNOLD and PARKER & NEWLIN, for appellants.

CALLAHAN, JONES & LOWE, for appellees.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was a suit in chancery in the Circuit Court of Crawford county. There is set out in the bill an option contract for the leasing of certain oil lands in Crawford county, Illinois, as follows:

"ROBINSON, ILL., June 16, 1906.

"For the consideration of twenty dollars ($20) in hand paid and an after consideration of $19,180, nineteen thousand one hundred and eighty dollars, to be paid as soon as lease is accepted, we, Elder York and Margaret E. York, have this day bargained and agreed to lease our land to Lyman C. Scott or his assigns, said land being the north quarter (¼) section eleven, township six (6) north range 13 W., being in Oblong township, Crawford county, Illinois, 160 acres. Said lease to be at ⅛ royalty. Gas rental to be one hundred dollars, first well to be completed within 60 days from

date, or damages of $50 to be paid. This agreement holds good for a term of (3) years from date.

"In witness whereof we have hereunto set hand and seal.

his

Elder X York, [Seal.]

mark

Margaret York. [Seal.]

Witness Ed. S. Baker."

Attached to this contract was a certificate of acknowledgment, by Edward S. Baker, notary public.

It is fully and aptly stated and alleged in the bill that the above quoted agreement was procured to be executed and delivered by appellees to appellant Scott, by means of fraud and mistake, in this, that the clause: "This agreement holds good for a term of (3) years from date," was as agreed upon by and between the respective parties to be for a term of three days, instead of "(3) years," as it appears in said agreement. It is alleged that Scott caused the agreement to be recorded, and afterwards assigned it to appellant, Shryock; that appellees were in good faith willing and ready to perform their part of the agreement according to the terms thereof as they were actually agreed upon and understood by them to be, and that appellants wholly made default. The prayer of the bill in substance is: That upon the final hearing the court will grant a decree changing and correcting said agreement or option and the record thereof, so as to conform to and express the agreement as made and intended to be entered into between complainants and said Lyman C. Scott, that it be made to say, "This agreement holds good for a term of three days from date"; that said agreement or option may be decreed to be no longer of any force and effect and that complainants have such other and further relief as their case may require, and as to equity and good conscience may seem meet and proper.

Upon final hearing had upon evidence produced in open court the court granted the prayer of the bill

and rendered a decree in accordance therewith. From this decree appellants prosecute their appeal to this court.

While counsel have assigned upon the record many errors, they have only brought forward into their brief and argument three propositions that we deem of controlling importance.

It is insisted that the trial court erred in denying a motion of appellant Shryock to remove the cause to the United States Circuit Court, and as incident thereto, that the court erred in overruling a motion of appellant Scott "to be dismissed out of court." They say that Scott had no interest in the case and that, Shryock, by filing his petition and bond to remove the cause, arrested the jurisdiction of the state court and removed the whole matter to the jurisdiction of the United States Circuit Court.

It is sufficient reply to these contentions to note that the abstract does not disclose either the contents or substance thereof, of any petition or bond by Shryock for the removal of the cause to the United States Circuit Court, nor of any motion by "Scott to be dismissed out of court." "The courts should not be required to look into the record for the instruments referred to in the abstracts," Richey v. Dunham, 50 Ill. App. 246. "The court cannot undertake to prepare proper abstracts or to search through the record for that which because relied upon, should be abstracted," Klaas v. John Kauffman Brewing Co., 63 Ill. App. 319. While an abstract need not contain portions of the record in which no question is made, the portions on which error is assigned should be so fairly and fully abstracted that there will be no necessity for court or opposite counsel to inspect the record. Martin & Co. v. McMurray, 74 Ill. App. 44; Johnson v. Bantock, 38 Ill. 111; Lake v. Lower, 30 Ill. App. 500.

Counsel insist that appellant, Shryock, purchased the option agreement from Scott for a valuable consideration and took an assignment of it in good faith, and that the evidence does not prove that he had any

part in the original transaction or any notice or knowledge with respect to the alleged fraud, prior to the time of his purchase; and they invoke the application of the innocent purchaser rule.

Shryock does not testify in his own behalf, and we do not feel called upon to discuss the weight of the evidence as to his guilty knowledge, in as much as in our opinion counsel's position as to the law is unsound. The instrument in question was not assignable at common law, nor is such instrument made assignable by any statute of this state, nor did the instrument or the assignment of it convey any title to the property described in the instrument. It is an instrument of that class which an assignee must take, subject to any defense that would be valid between the original parties. We are of opinion that Shryock took the assignment of the option agreement from Scott with all its infirmities and subject to all defense that could have been made against it in the hands of Scott.

The only remaining question is as to the sufficiency of the evidence to support the decree. Appellee, Elder York, was an illiterate old man who could neither read nor write. He owned 160 acres of land in the oil belt of Crawford county, upon which he resided with his family. The oil industry was being developed in his immediate neighborhood and this attracted speculating leasers and optioners from both near and far. One of these was Edward S. Baker, of Robinson, who had made a number of unsuccessful efforts to secure a lease of this quarter section of land from the old man. On the morning of June 16, 1906, Baker went to the York farm in company with a stranger by the name of Lyman C. Scott, "a leaser of oil and gas lands," who had been engaged in that business in the states of Pennsylvania, New York, Ohio, Indiana, Kentucky, West Virginia, Michigan, Canada and Illinois for twenty-five years. His first appearance on that business in Crawford county, Illinois, was but a few days

before the transaction in question, in this case. He learned from Mr. Baker of old man York's "160 acres being loose." Mr. Scott was not a developer of such properties and did not intend to perform any of the terms of the proposed lease. He had no money to pay for a lease, and "that is the reason he took the option on it," instead of taking the lease at once and paying down the $20,000 bonus or lease money. He was a mere speculator and expected to sell the option "to Pittsburg or Toledo parties." When Baker and Scott reached the York farm, they found Mr. York at the wood pile. There the matter was talked over and the terms of a lease agreed upon, the terms being as specified in the option agreement above quoted. Scott said he wanted three days to wire his company, and it was agreed that upon Scott's paying $25 that day (the $25 was afterwards changed to $20), he should have a three days' option, and that the balance of the $20,000 for the lease to be executed, was to be paid at the State Bank in Robinson on June 19th, and if the money was not there on that date the option agreement should be null and void.

After the terms of the proposed lease and option agreement had all been agreed upon, the parties went into the house where Scott wrote the option agreement above quoted and read it over to Mr. York in the hearing of Mrs. York, and their two sons, Beryl and Luther York, reading it as they had agreed it should be. "This agreement holds good for three days." The agreement was then signed. About the time the agreement was being signed, Mr. York wanted his son Beryl to read it, and Beryl commenced to do so, but when he had read about four lines of it, Scott took it out of his hands, saying they were in a hurry. Immediately after the contract was signed, Scott paid Mr. York $20 and he and Baker left for Robinson, leaving a carbon copy of the agreement with appellees. Upon their arrival at Robinson, Baker attached a certificate of acknowledgment to the agreement and filed it for record.

After Baker and Scott had gone, Beryl read the carbon copy and discovered that it read "(3) years" instead of three days. Mr. and Mrs. York went immediately, that afternoon, to Robinson to find Scott to have the matter corrected, but failed to find him. They went again on the 19th to the bank where the money was to be paid, prepared to receive the money and execute the lease and found neither Scott nor the money there. Scott left Robinson the next morning after the agreement was signed and at the time of the trial of this case, had not been in that county since. On the twelfth of July Baker sold the option agreement to appellee Shryock, and the proceeds of that sale were equally divided between Baker and Scott.

We think the evidence fairly establishes the facts above recited and that they are sufficient to warrant and sustain the decree.

The agreement as it was actually made, and as it was read to appellees and as they understood it to be, was reasonable. If the option should be accepted it would bring them almost immediately a considerable sum of money, and the early development of their property with large royalties. If not accepted, they would have the $20 earnest money and be free to lease to others at the end of three days. In the form in which it was fraudulently written, it tied up the land for three years for a mere nominal consideration, at the end of which time the option might not be accepted and by that time the development of surrounding lands might so drain the oil and gas from appellees' land as to leave it practically worthless.

The decree of the Circuit Court is affirmed.

*Affirmed.*